We will hear argument this morning in Case 22-429, Acheson Hotels v. Laufer. Mr. Unokowski? Mr. Chief Justice, and may it please the Court, Respondent does not face an imminent injury from the absence of accessibility information. At the website of a hotel, she has no interest in visiting. Respondent faces neither an informational injury nor a stigmatic injury. She does not face an informational injury because she has no use for the information she seeks. She is not interested in going to the hotel, so she has no reason for information about whether it is accessible. Nor does she face a stigmatic injury. This Court has held that a person is injured when she is personally subject to unequal treatment. But that requirement is not satisfied by a plaintiff who searches for hotel websites on the Internet to check whether they comply with her interpretation of the ADA. Finally, the Court should decide the question presented in this case. The circuits are divided. The question is important. The arguments are fully aired. And if the Court doesn't decide the question here, it may not have another opportunity to do so. The Court should not bless a legal strategy of filing large numbers of lawsuits, settling almost all of them, and abandoning the rare case that threatens to create adverse precedents so as to facilitate the filing of another round of lawsuits. I welcome the Court's questions. But Respondent says that she has withdrawn her suit, so why should we decide this? It seems as though it's finished. Well, Respondent has withdrawn her suit. I mean, she hasn't promised not to bring new suits in the future, and if she doesn't, another plaintiff presumably will. Respondent's position is that any person with a disability with accessibility needs in America who visits the website can bring a lawsuit, so presumably another plaintiff will come forward and start bringing the same thing. Do you admit, though, that it would be easier to simply moot this out and wait on a suit that is still pending for another round to discuss standing? I'm actually not really sure it would be easier, because I think that even if the Court does what Respondent asks, it would still be a significant precedential decision. I mean, the Court would essentially be blessing the legal strategy over our objection of filing large numbers of lawsuits and abandoning them at the last minute, and that, I think, would create a template for future plaintiffs to rely upon. I'm sorry, I don't understand. You admit that this plaintiff is not entitled to monetary relief. Yes. The hotel is owned by a different entity now, correct? Correct. And so you would need a new plaintiff and you would need a new defendant. You want to get a precedential to get a decision that's not advisory, because what you're saying to us, the issue is important. This plaintiff gets nothing. The defendant has to be different because it's a different entity running it. So tell me why it's not moot, and tell me why we wouldn't be just giving an advisory opinion. So if there was ever a live controversy, it's definitely moot at this point. We're not disputing that, Your Honor. What we're simply saying is that there was never a live controversy in the first place, and the court should therefore so hold. In other words, the court should say that whether it's moot is sort of immaterial because from day one there wasn't a case or controversy. I'm sorry, I don't know why you haven't answered my question. Why isn't this purely advisory once there's no longer a live controversy between the parties before us? I don't think it's an advisory opinion at all, Your Honor. Both parties agree that the correct disposition of this case is to hold that there's no Article III case or controversy. We simply disagree on the reasoning for that. Well, there's credentialed doctrines. Standing is one of them. Mootness is another. But I'm unaware of any case where this court had a standing and mootness issue and decided standing rather than mootness first. Your Honor, I'm not sure there's been a case in this particular configuration that's arrived at the court before, but I don't think that there is a dispute. In this case, the court has the jurisdiction to decide either of the articles. Well, yes, we can decide either, and so I'm asking you in what case have we ever done this before, decided standing, which is a substantive question when there's no live controversy before us. So I don't think the court has decided on this particular constellation of facts, the standing issue. But, again, both parties agree that there's no case or controversy. The only question is why. I suppose logically standing is an antecedent question to mootness, right? You can't have something moot until you have a case. That's correct, Your Honor. I think that the first question the court should decide in the case is whether there's a case or controversy in the first place. The concept of mootness almost presupposes that at some point it wasn't moot, and we think that this case, there was no case or controversy in this case from day one. That's the question the court might assertion. Right, but we've never done that before is what I understood your answer to Justice Sotomayor to be. So if it's sort of a logical antecedent, why hasn't this court set it up in that way? It would seem to me the question is which is the easier resolution. And so to the extent that you both agree that this is moot, why isn't that just the end of it? Well, Your Honor, in terms of not having done it before, it's very unusual for a plaintiff to respond and to prevail in the court of appeals to abandon her claim in the Supreme Court. That comes up very rarely, and I don't think I've ever seen a case quite like this one where the seeming purpose of the abandonment of the case is to allow other plaintiffs. I understand that, but when it happens, you know, cases do get mooted, and when it happens the defendant's ordinary course of affairs is to argue mootness, please dismiss the case, it's over. And you're saying that, that the case is moot. You agree the case is moot. So I guess I would at least, circling back to Justice Thomas' question, why doesn't that just resolve it? You're asking us to take on extra work to end a case when we've all agreed it has to be ended, and ordinarily that would be all. I think the court, with apologies, should take on the extra work, Your Honor. I'm sorry. Well, go ahead. I think the reason it should decide the standing question in this case is that I think the court should have institutional concerns about the strategy of abandoning cases at the last minute, especially if it's going to set a template for future plaintiffs to do the same thing. Isn't there a remedy for that munsingware, though? I mean, shouldn't your answer be moot the case and vacate the lower court ruling to the extent there is one against us? I don't think that's good enough, Your Honor, because, first of all, the First Circuit's case is still going to be persuasive authority to all district courts in the First Circuit, who are going to know that if the case goes back up, then presumably— But that's what the munsingware remedy is about, isn't it? I mean, it's so that you don't suffer any harm. We vacate the lower court opinion because, if you're right, there's some kind of tactical strategy here, and then we all go home. Well, remember that Ms. Laufer's victory in the Fourth Circuit remains binding precedent in that court, and I just think this case is different because it's part of a broader litigation program of bringing hundreds and hundreds of lawsuits. That's what I think makes this case unique. May I follow up on—I'm sorry. I should say, I'm as concerned as anybody about our workload, but why are you sure that—which one's easier? I mean, on the one hand, you have the standing question. Maybe people will think that's easy, or maybe not. The mootness question is whether or not a plaintiff can moot a case to manipulate the jurisdiction of this court. I mean, the mootness papers weren't filed until after the petitioner's opening brief, and we certainly have the authority under our precedent to decide, if you have two jurisdictional issues, which one to do first. And in terms of—you know, I think it's a difficult question as to whether or not somebody— particularly when you have a program of litigation like this around the country by people who may or may not have standing— can manipulate the court's jurisdiction by, after the court's granted cert, mooting out the case. I agree with that, Your Honor. And I think that if the court were to write a precedential decision addressing— or, you know, agreeing with Respondent's theory of how this case should be resolved, presumably the court would address our objections as well. Counsel, in this case, this plaintiff has dropped all her actions. The lawyer who did this strategy has suffered disciplinary proceedings. She's represented she's not going to use him anymore. So, yes, there may have been a bad tactic in place, but you're ascribing a motive to other people before it's happened. And in every other case, I don't think every case suffers from this same set of failings. I agree 100 percent, Your Honor. We are not suggesting that all testers or all testers counsel have acted unethically. The only person who's subject to a sanctions order in this case is Mr. Gillespie, who's the local counsel in the District of Maryland. I think that in other cases with other plaintiffs, I'm not suggesting there's going to be false statements to courts and opposing counsel, but the fundamental program here is just to file large numbers of lawsuits and settle almost all of them. Even, you know, ethical ADA lawyers do that, and I think the court should be concerned that whether that's permissible will not see the bright lights of appellate review if the court blesses a strategy of batting these cases in the rare situation where the defendant decides to litigate the case all the way up and there's a possibility of adverse precedent. Do you know, Kelsey, I mean, I'll return to our workload for a minute. I mean, often when we're in the district court, I mean, I see this as a prudential issue, and I've thought a lot about it because, I mean, I think it's a difficult prudential call. In the district court, when you have two, you know, if you have a more difficult issue and an easier issue, and I'll just assume for present purposes that mootness is easier. You know, the district court doesn't know if the issue's going to arise again. You know, when in Pearson we got rid of the Saussure two-step, we said, well, listen, you know, he doesn't know, and a higher court may be considering the issue. The district court is delving in and expending all these resources on something that may never come up. But institutionally, if we're thinking about allocation of resources, it seems to me that that might be different here because I take it what you're saying is that there's an entrenched split that we're going to have to decide at some point, and significant resources have already been invested in this case, and you filed your opening brief before the suggestion of mootness was filed, thereby investigating, sorry, investing resources, and that we're going to have to do this all over again. That is correct, Your Honor, and just to add one additional point onto the table, I mean, there's a lot of judicial resources expended just by these lawsuits. I mean, when you have, you know, 200 lawsuits being filed in federal district courts, the judges are expending resources on that. Individual judges may be deciding the standing question on their own without guidance from this court. So it seems to me that the goal is to save judicial resources. Of course, as Your Honor said, this court's resources might be saved if it just decides the question was presented in one way or another. If we think of the entire federal judiciary, I think that as well. I wonder whether the – Suppose that there's a case that involves an issue that has divided the courts of appeals. There is an entrenched split. It would be helpful to provide guidance on this issue and not allow the split to persist. But the case before us is dead as a doornail and is not going to arise again between these parties. Would you say there that for the prudential reasons that have been mentioned, it would be permissible for us to decide the issue? I don't think the court could decide the merits. I think that under Article III, that's just flatly banned. But this case is different because the question presented is a question of Article III. So the court has the jurisdiction to decide that jurisdictional question. Well, but doesn't that look just like an advisory opinion? I don't think it's an advisory – We're not – we would not be addressing anything that is of relevance to the case that is before us. We would be addressing an issue that should be resolved. It's an advisory opinion. Again, there are arguments in favor of advisory opinions. I just happen not to be consistent with Article III of the Constitution. I disagree, Your Honor. I think that the judgment of this court is going to be that there is no case for controversy. That's not an advisory opinion. That's disposing of the case in front of the court. And I think the court is free to state the reasoning that we are advocating in this case as part – in this case, excuse me, as part of its judgment that there is no case for controversy under Article III. I mean, it still feels a bit unjudicial, if I may say, so that the question is not just resources, but something broader than that. And I take the point that each of these is a jurisdictional issue and that there's nothing jurisdictionally precluding us that this is a matter of prudence. But when you look at a case that's dead as a doornail several times over, you know, the case has been dismissed by the plaintiff. The defendant is totally different. The defendant's website, everybody agrees, is now in compliance with the ADA. So this is like dead, dead, dead in all the ways that something can be dead. And to use that case as the vehicle for deciding an important issue, an issue that probably is going to need to be decided at some point, but surely can come up at a live case, I guess it just doesn't seem like something that a court should be anxious to do. Well, just to address some of the subsidiary issues Your Honor mentioned, the question of whether the updates to the website made the case dead is actually disputed among the parties. The First Circuit held and Respondent continues to argue that that didn't moot the case. So I think that would be a difficult, may not difficult, but the court would have to. But it's not disputed that the hotel's website is in compliance. The only thing that's in dispute is what the issue is with respect to hotels.com. But the hotel is now owned by somebody else. The hotel is in compliance in terms of its own website. And most importantly, the plaintiff has dropped this case. Right. So in terms of the sale of the hotel, so Atchison Hotels remains the defendant in this case. It would be the subject of any hypothetical injunction and fee award. So we don't think that moots the case unless there's a court order substituting the new defendant, which never happened. So I'm not sure that's a reason not to decide the question presented. I think you're avoiding the main. OK, I understand Your Honor's argument that if they drop the case, why are you deciding this big question? And yes, that is certainly a discretionary consideration that the court should consider in deciding how to dispose of this case. It is a weight on one side of the balance. And I just think that the weights are greater on the other side of the balance when you consider the institutional considerations that should lead the court to decide the question presented, such as that concern about blessing the legal strategy in this case of responding, which will be invoked in future cases by other litigants because the same thing is going to happen. A plaintiff is going to file a large number of lawsuits. And in the rare case that goes up, the plaintiff will abandon the case at the last minute. And if there's pushback from either the court or the defendant, the plaintiff is going to say, look at what happened in the Atchison case. The Supreme Court said it was perfectly fine to adopt that legal strategy. But if it's going to happen again, why don't we wait until it happens again? And then we have the pattern you're talking about. What you're saying is resolve it now because you can foresee that that will occur. And I guess I just don't understand why that's so convincing. It seems to me intention to suggest that this issue will come up again and that we should take it now. We should just wait until it comes up again. Well, I think what's going to happen, Justice Jackson, is that in the court of appeals, a plaintiff will drop the case, and then the plaintiff will cite this court's decision in this case to say that's fine. And then the court of appeals will follow this court's precedent in this case and allow the plaintiff to drop the case. And then I guess theoretically a petition for certiorari could be filed, but it's not clear that the defendant has standing to even file that petition for certiorari when the defendant actually won in the court of appeals. And so it's actually not clear to me this question will come back if future plaintiffs follow this template. And, again, in your Honor's opinion, in this case, the court's going to write an opinion, even if it resolves this case on the ground respondent has advocated. I would guess it does. Well, wouldn't our opinion on mootness be both parties have agreed that this case is moot, therefore we have no live controversy, period? Well, I mean, we've opposed that disposition, and so I don't know. I'm sorry. Counsel? You say it's not moot? No, we're saying it's moot. We just don't think the court should resolve the case on that ground. And so I would guess the court would address our arguments. I'm sorry, Your Honor. With respect to standing, would it be sufficient if a plaintiff were to allege in her complaint that she does intend to visit the hotel, period? Yes. That would be enough for standing, Your Honor. And the person – and there's a downstream consequence from being deprived of the information. We haven't disputed that if there's a person with concrete travel plans who says, look – Well, concrete travel – I'm talking about an allegation, a complaint, just I may someday visit this hotel. I don't think I may someday is enough. That kind of sounds like the allegation. I will someday. I will. I think I will. Someday probably is not enough. Someday not good enough? I don't think – under a Lujan case, the court held that someday plans aren't good enough for standing. Next decade? I think it's got to be concrete plans. If you're going to Wells next summer and you're trying to make a reservation at Coast Village, I think that's enough for standing. But that's not the way people travel, Counselor. When people travel, or at least when I do, and I think I'm not abnormal in this sense, I look at a place. I look at various sites to decide where I want to stay. I look at price points. I look at the level of accessibility, whatever. All right? So what you're saying is that there's no stigmatic harm to a disabled person in their ability to do what I do. Look at a place and say, I may want to visit Venice. I may want to visit Florida. I may want to visit California. And I want information about all the sites there so I can decide what suits me best. And you're saying you need something much more concrete than that? So I've been deprived of my ability to make an informed choice about where to visit, and I'm not harmed stigmatically? Well, so it seems to me that if the person is traveling and is checking a few hotels and is trying to decide where to stay, but the person's planning to travel, then I think that there would be standing. Like if you're saying, I want to go to Ocean City, and I'm looking at two or three hotels, not sure which one to stay at. But the person who says, I want to find the place to visit, Ocean City, Atlantic City, whatever other city, and now I'm doing my investigation of all three cities, and I decide against your city because I couldn't find enough accessible places, I'm not harmed? No, I don't think so. I mean, I don't think that if you have no idea where you're going to go, and you're just going to a hotel website for some randomly picked hotel in the city and see it's not accessible. But why aren't I, I don't understand. Discrimination, I thought, meant that I'm being treated differently than other people. If I go on a drive to a place, and there's a sign up that says, no disabled person is welcome, I've been discriminated against, correct? Yes. What's different than my going to a website, and the website saying nothing about disability, so I know I'm not welcome there? Well, your honor, if you see the sign that says no disabled people welcome, I actually don't think they're standing unless you want to enter the business. So, if you're on the internet, and you see a sign of some business. So it's just, oh, so the people who used to go to lunch counters and wanted to just sit down, they didn't necessarily want to try the food there. Those people weren't discriminated against? They were definitely discriminated against because they were prevented from sitting at the lunch counter. Could I just go back to what you think would be enough? So, if a person said, I'm checking out, I'm trying to find a fully accessible hotel in a small, great beach town. So they're looking at a bunch of things, trying to find a fully accessible hotel in the kind of beach town that they want to go to. That would be enough. May I answer the question, your honor? Please. Yes, please. I think that would be enough, your honor, yes. Okay, so not concrete travel plans, but some indication that you're seeking this information for a purpose. Well, I think it has to be a little more just than a generalized purpose. If you're planning to travel, if you're not decided whether to go to Ocean City or Hobart or Bethany Beach, you're checking your options in all three of them, then I think that probably is enough. I don't think you have to say that you're going to this specific stretch of road in Ocean City. Thank you, counsel. How many hotels did Ms. Loffert contact and how many different places? Depending on how you count, because sometimes lawsuits can count as two or one, it's definitely more than 500 and perhaps more than 600. So if she alleges that she may well go to this particular hotel, you would be able to challenge the veracity of that allegation, right? Yes, your honor, that happened in this case, in fact. There's a declaration in which respondents said she would take this long road trip to Maine and other places, and the court basically found that not plausible. Thank you. Justice Thomas? Justice Alito? In fact, she did, however. She did take a long trip. Ultimately, the record shows that she took a trip to Maine. Yes, your honor. You have a statement a couple of times in your brief. You say you're not challenging the use of testers in ADA litigation and principally distinguish this case to one where there's an attempt to enter a building. So I guess I'd like to hear what you mean by that, what you think would be permissible, and why it's different from this case. That's right. So we've distinguished the scenario where someone is actually trying to physically enter a building, and but for the accessibility barrier, the person couldn't enter. And that's because we understand the inability to access a building. That's a traditional Article III injury, regardless of the motive for entering the building. So suppose that you were trying to enter a hotel, but you didn't really want to stay at the hotel. I think that probably would be if you were physically preventing it. But you want to go there. That's right. Saying like you want to enter a concert venue, even though you don't want to stay for the concert. So every court of appeals who have addressed the question your honor just described has found standing on those facts. And so we haven't contested that in our briefing. And I presume that that's similar. I mean, tell me if you think this is wrong. To let's say that there's a blind person who, you know, can't access a website at all, because there's not the appropriate technology for the visually impaired to make use of the website. Would you say also that that's sort of like the person who wants to enter a building? That, you know, the visually impaired person is in fact a tester and is just checking out different websites? So we actually haven't taken that position. There's three courts of appeals decisions, one of which was written by then Judge Barrett, involving visually impaired testers who go to websites of credit unions that they weren't even statutorily eligible to join. And those courts held that the plaintiffs did not have standing, and we actually think those are correctly decided. Yeah, I understand that. But if a person is, you know, checking out websites in the way that, you know, it's not like I'm eligible to join the website of a particular company, but just in the way we all check out websites and can't do that, whether the fact that he was a tester could prevent the person from making a claim. So I don't think the person has standing, but even if you disagree, our case is different from that. So the first part of my answer is I don't think so. I think that, as in the case of the credit unions, merely trying to seek information about a service you don't want, I don't think that's an Article III entry under TransUnion's discussion of informational harm. But the second part of my answer is that even if you think I'm completely wrong on that, I think that's distinguishable because in that case, the plaintiff was prevented from using the website. In this case, we think what really happened here was that there is a bar to accessing the hotel, which doesn't become relevant until the plaintiff tries to do that. Thank you. Justice Gorsuch? Justice Kavanaugh? Justice Barrett? I have a question about some of Justice Sotomayor and Justice Kagan's hypotheticals. I mean, it does seem like they're all meaningfully different in the injury sense. And I'm wondering whether – I mean, I'm thinking about a plaintiff who tries to make a reservation at Atchison Hotel and then just gets frustrated because she's disabled and she can't get the information. So she says, I'm not giving this place my business, but I want to sue. Like, I would never go stay there because – and I'm not going to go back to the website because I'm offended. You know, this isn't a place that I want to frequent. Do you think that person has suffered an Article III injury? Yes, but they couldn't sue because you can only get an injunction. Injunction, please. Okay, so that's my question. You're not taking the position that my plaintiff hasn't suffered an Article III injury, but you're saying here that the forward-looking piece of it is because you have to show that you have standing for the relief that you seek and the ADA only permits an injunction. The injury has to be in the future, correct. Okay, thanks. Justice Jackson? So I guess I'm trying to figure out the difference between your argument in saying that you want to preserve tester standing, the testers you understand are okay, and Ms. Loeffler is not. And I know that you say that she is a self-appointed tester. Is that because – you're trying to distinguish her from the testers that you think have standing and don't? And what's the difference? No, I – Okay. That's not – I mean, she is self-appointed. Yes. She doesn't work for the government. That's all I meant by that. I see, I see. But other testers who themselves are self-appointed would have standing. It depends on the particular facts. I guess I'm trying to – I'm trying to ferret out whether there – whether what's really hard here is drawing the distinction between a tester who actually experiences discrimination even if they don't really want the service subjectively, right? So this is Justice Sotomayor talked about the people going to lunch counters. They aren't hungry. They're not actually there for the sandwich. They're going in because they're putting themselves into a discriminatory situation in order to be able to challenge the policy. Ms. Loeffler says, I'm challenging the policy. But I guess the question is, is she really experiencing discrimination? Is that what we're supposed to be kind of thinking about? Yes. So first of all, I just want to put on the table we definitely think the person at the lunch counter has standing. Okay. And that's not – and that's because it doesn't matter that his motivation is I didn't want the sandwich, right? That's right. That's the facts of the Havens Realty case, essentially, which we haven't asked the court to – So it doesn't matter that she's doing this to sue. That's – I mean, I know you keep talking about her motivation. She wants to do this to sue. In the same way as it doesn't matter that the person's subjective motivation is to set up circumstances by which they can challenge the discriminatory lunch counter, it doesn't matter that her subjective motivation is to sue. There must be something about whether she's actually experiencing discrimination that is the difference in your argument, right? I think that's right. I don't think that subjective intent matters when there has been a concrete Article III harm, such as in the Cruz case being banned from speaking, such as in the Tester case not entering a business. And I do think that being the victim of intentional racial discrimination, as in the facts of the Havens Realty case or the hypotheticals your Honor has described, may inflict in certain circumstances in Article III stigmatic injury. We just don't think that these facts are comparable to those. That she has actually been the victim of an injury, and that's because you say she never – she disclaimed her interest in going to Maine. So I think there's several differences between this case and the lunch counter hypothetical. So first of all, I think this is more of a generalized grievance. or Ms. Coleman in Havens Realty, like the person was personally the victim of racial discrimination. I think that when you just go to a website to check ADA compliance, it's more of a generalized grievance. There's also no intent to discriminate in this case. I do realize that the ADA considers the disparate effect of facially neutral policies to be discriminatory, just as disparate treatment is discriminatory. But in this case, there's no disparate effect either, because she's not using the information. So there's no – the disrespect of intentional discrimination – But that's all in the merits. I'm talking about injury, right? I mean, that's whether or not she could actually win the case. You're saying she can't even bring it, and I'm trying to understand why you think she's not injured. And I think I get it. I just wanted to be clear on the difference between her and a tester. On the question Your Honor described about being subject to discrimination, I do think this case is properly understood as discrimination against people who are limited from accessing the building. Like, the purpose of accessibility information on a website is to facilitate accessibility of the building. And so not – No, isn't it – I'm sorry. Isn't it to facilitate their assessment of whether or not this building offers services that they can use? So what she's trying – the reason why there's discrimination is because an able-bodied person can get on the website, and it shows that there are 15 rooms available at this hotel, and so they know that there are 15 rooms available and they could go there. Whereas a disabled person, unless the hotel identifies that it actually has accessible rooms, can't look on the website and assess the availability of those rooms. I thought that was the discriminatory issue. Yeah, but the problem is that looking at the website is not an end in itself.  Like, the reason you want to know whether there's a wheelchair ramp is to know, if you show up at the hotel, whether you can enter it. Maybe. I mean, there could be a lot of reasons, right? I mean, the point is you're being discriminated against because you can't – you don't have the same access to information about the status of the hotel and whether rooms are available. I guess I just don't view – I mean, there's no argument that Respondent couldn't use the website, unlike in the hypothetical with the visually impaired plaintiff that Justice Kagan asked about. I think that her ability to use the website was not constrained. She just didn't get information that she needed to know whether she could access the building, which I just don't think is an injury unless you're going to use that information somehow. Thank you. Thank you, Counsel. Ms. Ross? Mr. Chief Justice, and may it please the Court, as the questions this morning make clear, this is an unusual case. At the time we filed our brief, we flagged serious concerns about whether the case was moot. Now, as I take my friend to agree, it's clearly moot. We have not only a plaintiff who no longer seeks to litigate her claims, a defendant who no longer owns the hotel, but also a website that is no longer lacking the relevant information. Rather than decide the more difficult standing question in this highly artificial posture, the Court should exercise its discretion to vacate the First Circuit's decision and dismiss the case as moot under Munsingware. At a minimum, if the Court exercises its discretion to address standing, it should hold that Respondent lacks standing for a narrow reason. Her claim to standing depends on her view that Title III and the Reservation Rule give her a freestanding right to information akin to the right to information about housing and havens. But the ADA and the Reservation Rule are narrower. They give individuals with disabilities a right to information in connection with the equal enjoyment of a hotel's reservation service. Because Ms. Laufer has not alleged that she would use that service in the future, she lacks standing. I welcome the Court's questions. You're not saying that we don't have jurisdiction over the case, as I understand you. You're simply saying that we should exercise our discretion not to decide a standing issue. That's correct, Justice Thomas. When the government was on the receiving end of this type of a dismissal of a complaint in district court after the Court had granted certiorari in Carnahan, we specifically laid out our thoughts on this issue, specifically that the Court does have discretion to decide either the standing or the mootness question first. But there we said it makes sense, given the artificial nature of the case, once the plaintiff has dismissed her claims, to decide mootness while leaving on the table the possibility that in a future case you might choose to decide standing. But I think, for the reasons I was just explaining, that this is not that future case because it's not just sort of artificial in the way that any case in which a plaintiff who has dismissed her claims will be artificial. It's sort of extra artificial for the reasons that Justice Kagan was pointing out. You're confident that the mootness question is easy. Is the government at all concerned about the manipulation of this Court's jurisdiction when you have Ms. Laufer, I gather, is not the only person doing this, bringing hundreds of cases around the country, and then when the Court gets interested in her case, it's all gone. It's moot. It doesn't stop any of the other dozens of people, however many there are, who are doing the same thing. So we may have to come up with another case as soon as this one, if it's not addressed, and then that one will be mooted. And, you know, we can't sort of keep granting cert and having it constantly being mooted with never a determination of whether they're standing in those variety of cases. I mean, you may think that that's not necessarily easier or harder than the standing question, but it's certainly not one that we can just, you know, toss off with the back of our hand, is it? So I certainly understand the institutional concern, and that is why, among other reasons, we think that the Court can and should leave on the table this option of actually deciding the standing question rather than the mootness question in a future case, should this actually become a pattern. I just think, again, that this is a particularly poor case to do it in, and I think beyond that, you know, on the more specific question of whether this case or a case like this will come to the Court again, I think this has already been covered, but the circuit split actually looks quite different now than it did when the Court granted certiorari. It's not just that the parties agree that under Munsingware, the First Circuit decision would have to be vacated in this case, but it's also that the Eleventh Circuit decision has since been vacated, and so now there's only one circuit decision on petitioner's side, excuse me, respondent's side of the split. And so I think parties may adjust their behavior in light of this, but, again, we, for the institutional reasons you know, think the Court can reserve this option in future cases. Reserve the option. How many times do we have to do this? The next case that comes up in the same posture as this, should we let that one go too, because maybe it'll be the last one, or should we address it here? So I certainly understand the concern, Mr. Chief Justice. Again, you know, I think it's not just that this is the first case. It's really that this is sort of moot to the third. I mean, it has a plaintiff who has dismissed her claims, a defendant who no longer owns the hotel in question, and a website that everyone agrees has been updated. And if you look at the First Circuit's decision, the reason why the First Circuit thought this case was not moot was this third-party issue with respect to hotels.com and other third-party websites. But under the regulation, it's the hotel owner whose job it is to inform those third parties about accessibility information, and we don't even have that party before the Court to tell us whether that has happened. I think the Chief's question was, next time we shouldn't do this. Do you agree? You know, I think certainly I would have to know more about what it looks like next time, but I think the whole point, obviously, of the Court reserving this ability would be, or recognizing this ability, really, because they're both jurisdictional questions, would be to allow you to say, yes, we're going to go to standing in the next case. Do you think it's relevant that the reason the split looks different, too, is also perhaps strategic behavior on the part of the respondent, because didn't she go to those other circuits and then dismiss her claims and ask for the decisions to be vacated? So, you know, I don't want to sort of impart a motive to any of the parties on either side of this case. I think the 11th Circuit decision is actually a little bit more complicated than that, because it was actually that the defendant not only, or had not just sold the hotel at the time of the decision, it actually had dissolved and had not told the Court that at the time, and so it wasn't sort of just on Ms. Laufer's side of the beach. It was at her request, is all I'm saying. Yes, I think it was at her request. You know, again, I think the question really is, given how much more difficult, at least, we think the standing question is than the mootness question, whether it makes sense in this case where we have these additional complications to go ahead and decide that. I'm wondering, just to turn to the standing question, how you would distinguish your position from Mr. Unikowski's views and why it matters. Sure. So I think there are sort of many differences, but I guess I'll hit three main ones. The first one is that Mr. Unikowski, in his brief and then again this morning, expressed the view that the reservation rule is really about access to the facility under the ADA. We understand it a little bit differently. There's, of course, some element of access to the facility in there, but the statute does— When you say the facility, meaning the hotel. The hotel, the physical place of public accommodation. The statute also guarantees people with disabilities the equal enjoyment of the services of a place of public accommodation. And so I think how this cashes out is that on Mr. Unikowski's view, I think if you have a hotel like this one that has no accessible rooms, then a plaintiff can never have standing based on the fact that they didn't tell you that on their website because you couldn't go there anyway. We think that actually is an injury. If you're trying to figure it out and you can't because they don't have the information, you're not having the equal enjoyment of the service in the way that the ADA provides. Is your argument really a standing argument, an Article III argument, or is it a merits argument? You're saying that when Title III and the reservation rule are properly interpreted, then Ms. Laufer doesn't have a claim. That's a merits argument. So, Justice Alito, I appreciate that the analyses sort of overlap in this area, and I think the reason why that is so is that this court has specifically recognized that what Congress does in terms of creating rights and causes of action is relevant. I think the phrase this court used in TransUnion was, you know, do respect, obviously, Haven's other cases. And so I do think there's some overlap, but we do think the way this comes to the court is that when somebody personally experiences it with respect to her rights. Let me give you a hypothetical of the sort that our former colleague, Justice Breyer, might have asked. So let's say I am driving to a dog show, and I am transporting my champion, St. Bernard, and I want to check into a hotel with my dog, and they ask me, is it a service dog? I say, no, it's not a service dog. Is it an emotional support dog? No, it's not an emotional support dog. Well, they say, you can't check into the hotel because either we don't allow dogs at all, or we don't allow dogs that weigh more than 100 pounds. And I say, well, you're violating the ADA, and I sue under the ADA. Now, do I lack standing? Have I not suffered an injury, in fact, because I can't get this hotel room, and I can't have my dog, my champion St. Bernard, with me in my room? Or do I just lose because having the dog without it being a service dog or an emotional support dog is not covered by the ADA? So I think you might just have a merits problem there if I'm following it correctly, but I think it's a little bit different because the harm that you're alleging in that case is just the harm from, you know, maybe the person listening to you, you just really wanted to bring your dog, whatever it is. I think the way that this case is pitched is that the right that Ms. Laufer claims gives her standing is the violation of the statutory right to information or the violation of the regulation. And so we sort of have to know what the statute or the regulation provide to decide whether she is, if I could just finish the sentence, in an analogy to sort of an Allen v. Wright case, you know, we have to know whether she is the person who's personally experiencing the discrimination or she's the person who's sort of across the country hearing about it. And to know that, we have to know what the right to the nondiscrimination right is. Thank you. Justice Thomas, question? Justice Sotomayor? I'm a little confused. In your brief, you say Ms. Laufer has not alleged that she used, attempted to use, or planned to use the inn's reservation service. That's your brief at page 19 to 20. I don't know, and you've differentiated yourself from your colleague by saying he thinks that if she wasn't going to use the place at all, she doesn't have standing, and he'll answer that, okay? But does that mean that you're saying no tester could ever have standing? Certainly not, Justice Sotomayor. We just think that you have to look at the service that's being alleged rather than the ‑‑ so if I could give you a physical analogy, I do think it makes it a little bit easier. Here, you know, if you had two people who drive up to a store and they find that there's only stairs, no ramp, and one of them drives away and the other says, you know, I'd really like to go into the store, but I can't, I think that first person has ‑‑ excuse me, the person who says I'd really like to go into the store, but I can't has standing. The person who drives away does not have standing. Neither of them actually has to say I would buy something. So was her problem that she didn't say I didn't go into the website? If she says I'm surfing to see how many websites I can find information in, is that what her problem was, that she didn't try to make a reservation, that she didn't look at the reservation? I don't understand. When do we get to that point? Sure. So I think when we get to the point where she has an injury is when she says, just as the physical tester says, I would go inside. When she says I would make a reservation or I would use this information to consider making a reservation, because, you know, we certainly take the points that were expressed earlier about people who are considering whether they're going to go to the place and are trying to figure it out. But I think the difference here is that Ms. Laufer was doing this. She had no use for the reservation service itself. She had no interest in actually even completing that transaction. I find it so hard because I think what we're trying to do is to say that the website somehow is different than the physical entry or attempted entry. Because we agree in Blue Haven that the couple wasn't intending to rent. They just went and asked for information in that Blue Haven, I'm sorry, Haven Realty. And they got turned away. And you're saying that we shouldn't write this to overturn Haven Realty. Certainly not. All right. So what's different than my going to the black couple went to the door of the place, asked for information. A disabled person goes to a website, which is, in my mind, the door to the hotel, or at least a telephone to the hotel, and is being told, no, you're not welcome here because we don't have accessible rooms here. Basically, it's almost a negative, which is if you don't give me the information, you're telling me that it's not accessible to me. So I agree with a lot of what you've said, Justice Sotomayor. I think the distinction comes between the way that the statute at issue in Havens was written, which was it is unlawful to falsely tell any person that there is no housing available for a discriminatory reason, essentially. And so it doesn't matter whether you're going to rent the apartment. It does not matter at all. I think here the reservation rule is much narrower than that. It does provide a right to information, but in connection with actually making a reservation. So if you go to pages 9A to 10A of our statutory appendix, where the regulation is laid out in full, the title of it is Reservations Made by Places of Lodging. The requirements apply with respect to reservations made by any means, and all the way through to, you know, the exceptions and the effective date are based on reservations. And so I think it's not this sort of anybody in the world gets information in quite the same way that it was in Havens. But, again, completely agree that Havens 1 should not be overruled. I heard my friend to agree with that. And also that, you know, we're not suggesting that the person who actually does want to make a reservation doesn't have standing. I wanted to give you an opportunity, if you hadn't completed your list of things that are different between you and Mr. Unikowski, to do that. But I also want to ask whether the first difference that you mentioned, which is you're focusing on the reservation service, and he's focusing on the hotel or other facility, might introduce a kind of gamesmanship with respect to tester plaintiffs, you know, that you go to the website and you make the reservation and two days later you cancel the reservation and you've said, hey, I made a reservation. What's your problem? Of course I have standing. Sure. So I'll take those in order. I think to finish the list, and I appreciate the opportunity, the second one is that I heard Mr. Unikowski to suggest, both in the papers and today, that there might be sort of a particularization problem simply because this is on the website. We disagree with that. I mean, I think if an individual experiences the discrimination on a website because they're actually trying to make a reservation, as this court has said in other contexts, the fact that an injury is widely shared does not mean that it's not particularized. And then the third point was again about this question about, you know, what counts as discrimination? I think more so in the brief, and so I don't want to attribute too much of a difference here, but I think in, we think it's very clear that Congress defined discrimination to include the failure to make reasonable modifications. And so the fact that, you know, someone can say, well, my website has, you know, the same information for all comers and she wasn't sort of personally picked out to have different information, I think is no answer to the idea that this is real discrimination under the ADA. And I think that that's a concept that this court has recognized in other areas. So for example, in the religion context, obviously in cases like Abercrombie, the court has made clear that, you know, it's not enough to just have a neutral, no head covering policy. You need to make an accommodation to treat people equally to the gamesmanship point. I think that our test for standing will be narrower than the one that the court of appeals adopted. I think there will be fewer testers. I don't think there will be no testers. And I think that's just a consequence of the fact that this statute does provide a right to anyone who's trying to use the service. And we don't take a step back and look to their motive. But I do think to some of the questions that came earlier, the lower courts will have ways to ferret some of that gamesmanship out. For example, you know, if you say, I would have made a reservation on this website, but it turns out that when you see compliant websites, you never make a reservation. Then a court might say, that's not a credible allegation. Similarly, I think hotels will have an ability to change how difficult it is to make a reservation and then cancel it. And so it might not be credible to say I would have made a reservation. If in fact I would have had to put down my deposit up front and I couldn't get it back. If I canceled it later. Justice Gorsuch, Justice Kavanaugh. Just in the wake of your discussion with justice Alito, I just want to make sure I'm clear on your position under article three in our precedents. You agree that one could have a cause of action, but no standing, correct? I think that flows clearly from this court's decision in TransUnion and Spokane, among others. Okay. And you agree that one could have standing, but no cause of action. That's also correct. Justice Barrett. I just want to make sure that I understand your colloquy with justice Kagan. What if I am not disabled and I don't need any accommodation, but I prefer because I care a lot about the issue to only stay at hotels that do post the information on websites and also make accommodations. So I go to the website and I try to make a reservation and I could make a reservation at a room, you know, that's not handicapped accessible. But what I have standing then because the website and in fact, I do make the reservation, but what I have standing, then I used the service. And I guess I'm just trying to figure out, so you're saying that it's plaintiffs who intend to use the service who would have standing. And I'm trying to narrow down. Does that just mean anyone who would use the service or does that just mean the subset of people who would use the service and who it's actually relevant for to know whether the room is accessible. So I appreciate the chance to clarify and I apologize if I was unclear on this. I think it is certainly true that you need to be suffering discrimination within the meaning of the ADA. And so the person who doesn't need the accessibility information, I think would not have standing. So it's tied in. It's not just an, I honestly think some of the confusion in these cases is just by using informational injury with no additional explanation. It's not just kind of a bald informational injury. It's informational injury because, and you're saying it's tied here to discrimination because she lacked information. She was discriminated against because she couldn't access the service, the reservation service online. Exactly. I think both havens and this case are really better understood as discrimination cases that happen to involve information rather than informational cases for precisely the reasons, you know, for the purpose of the hearing. Justice Jackson. So my thought has been that we need to distinguish between the person who's getting online and they're a documentarian, a passionate observer, a person who's going there just to see are you following the rules, hotel X, hotel B, et cetera. And a person who I think you're saying is trying to use the service. Is that the relevant line in terms of establishing injury? Yes, Justice Jackson. All right. And so then the question becomes what does it mean to use the service? And do I have to actually make, express an intention to make a reservation or could I be looking at this because there's a possibility that I might want to, you know, go to this area in the way some of the hypotheticals have talked about. And I want to see, could I go there? Is that enough? So I think that probably is enough. I mean, I think, you know, this gets complicated because we're talking about both what's enough under the reservation rule, but also what's enough for forward looking relief. And so I think you sort of have to tease those things out, but it seems like if you are, you know, comparison shopping because you want to go, either you're thinking about three different hotels or three different cities and you're trying to figure out, you know, is this a place that I could make a reservation? Then I do think that you would have standing under our conception of the rule. Right. And that seems like it's a little bit different than what, what Atchison Hotels is saying. They are saying you have to know that you're going to go to that hotel or you have to have pretty imminent plans or something like that. Right. I think that's right. And, you know, I, again, as I said earlier, I think this cash, one of the ways this cashes out is the when the hotel actually has no accessibility information, the person is still being discriminated against because they can't use the service in the same way that somebody else can. And your bottom line in this case is you put Ms. Loeffler in the other bucket because she disclaims any interest in actually possibly going to this hotel or in Maine or whatever. So I think it's the disclaiming or the failure to allege that she would make a reservation because we are focused on the service, not sort of the downstream question of whether she ultimately would keep the reservation. And I think the part of the reason for that is that, you know, when I'm travel planning, when other people who don't have disabilities or travel planning, I have an ability to look at different websites, even if I'm ultimately not going to go to that place. And so I think part of the anti-discrimination or part of the discrimination here is being treated differently with respect to that ability to gather the information necessary to make the decision. Thank you. Thank you, counsel. Ms. Corcoran. Mr. Chief Justice, and may it please the court. There is no serious dispute that at the time Ms. Loeffler filed suit, Atchison provided no accessibility information on its reservation website, thereby excluding disabled people from using its online reservation services and engaging in unlawful discrimination under the ADA. As Congress recognized when places of public accommodation fail to take reasonable steps to make their services available to people with disabilities, they signal that disabled people are unwelcome participants in the marketplace and contribute to their day-to-day experience of being isolated, invisible, and ignored. If the court reaches the standing question presented by Atchison, it should reject Atchison's argument that a disabled person does not experience that dignitary harm when she encounters the accessibility barrier on Atchison's website unless she also has travel plans that are thwarted by the discriminatory treatment. For over six decades, and most notably in Havens Realty, this court has recognized that discrimination inflicts Article III injury regardless of whether the plaintiff experiences any harm beyond the unequal treatment. What it means to personally experience discrimination on the Internet is a novel question, but whether the answer is the one we've offered or the one the government proposes, Havens requires a test that focuses on what the plaintiff experiences on the Internet and the underlying motive in that experience or whether any downstream injuries result. Finally, I want to return to the issues the court started with today. Mr. Unikowski and I are both arguing before the court on behalf of clients that have no legal interest in the outcome of this case. Ms. Laffer, because she has dismissed her complaint with prejudice and will not be bringing any more ADA suits, and Atchison because it no longer owns the hotel whose reservation service the suit challenged. These circumstances render the case, at minimum, a poor vehicle for reaching the standing question. I welcome the court's questions. You started with the standing question, and you spoke of dignitary injury, and in your briefs I think you focus on stigmatic injury. The government seems to focus on informational injury, and there seems to be a difference in your characterization of the injury here. Would you spend a few minutes and explain which injury are we talking about? Here we're talking about a discriminatory denial of information, so it's not a pure informational injury. The discrimination aspect of it is important because, as in Havens, it's not just that you're not getting the information. You're not getting the information for a reason that conveys that you have inferior status in society, so it's inflicting a dignitary harm that you wouldn't have from a purely informational injury. I guess I could think of cases in which denial of injury doesn't go to one's deprivation, but it seems as though the government doesn't make that second step to the injury that you're talking about. It simply focuses more on the information that you are deprived of in order to be able to use or to make a decision about using a hotel. I think the government's brief does talk about this court's jurisprudence on whether it has never required any downstream consequence for a discriminatory injury, and that's certainly the approach the 11th Circuit took on this issue. I agree with you that discriminatory treatment is itself an injury under our precedents in Article III, certainly in Havens Realty. The discriminatory treatment here, I think Mr. Unikowski is saying, would have occurred at the hotel and that there was no discrimination in the information provided because everyone was provided the same information. I just want to give you an opportunity to respond to that. Yes, thank you, Your Honor. I think that's wrong for the reasons Ms. Ross said. Under 12182, places of public accommodation cannot discriminate in the provision of services, so it's not just in access to their building. The service itself has to be provided in a way that allows people with disabilities to use it in the same way as non-disabled people. I also think this argument, when it's framed that way, really is a merits question, and under Steele Co. isn't part of the standing inquiry. I think under Steele Co. and Lexmark, and if you combine those with TransUnion and Spokio, the court assumes as valid Ms. Lauffer's cause of action here, so you assume that the allegations in her complaint state a claim of unlawful discrimination under 12182, and then you also assume that Congress conferred a cause of action to her. And then the question is, did Congress act within its constitutional authority when it provided the cause of action here? I think Mr. Unikowski is saying, particularly in the briefs, this is an Allen v. Wright kind of case, not a Havens Realty kind of case. And the distinction between those two cases, Allen v. Wright, as you know, someone in Hawaii can't complain about discrimination that's occurring in Maine. Havens Realty, you actually personally experience the discrimination yourself when you're, as Judge Barrett, then Judge Barrett, said in Casillas, when you're lied to because of your race. So why isn't this case more like what Allen v. Wright described there? The plaintiffs in Allen v. Wright were challenging the IRS's failure to enforce the provision of the Internal Revenue Code that required it to withhold tax-exempt status from discriminatory schools. The plaintiffs in that case had no private right to the IRS complying with the law. They were seeking to enforce a public right. And in those circumstances, they had to show that they were personally injured by the IRS's non-compliance. But I wonder whether there isn't a broader principle at stake in a case like Havens. I mean, here your client has disclaimed. I said, I'm not intending to go on vacation at all. I'm not intending to go to any hotel. I'm not intending to use the reservation service at all to look for accessible hotels, to reserve at accessible hotels, to go to accessible hotels. I'm not doing any of that. So tell me how she is discriminated against by the inaccuracies on this website. The reason that the case comes to the court in that posture is because injunctive release is so elusive when you're talking about concrete travel plans. As was noted earlier, Ms. Loffer did amend her complaint in this case to say that she was going on this long road trip. But when the case was on appeal, she had already gone on the road trip. And so that's why when we say she's disclaimed any intent of going on a trip, it's because by the time the case was on appeal, she had already gone on the trip. Well, that's the case that's before us. It's a case before us with a stipulation that she's not using the website for any vacation purposes, and I think that your brief reads like this too, that the harm is, well, I'm not sure. You tell me. The harm is just I'm a person with a disability and I see that there is inaccurate information about accessibility, and that itself harms me even if I have no plans or less than plans. I'm just not thinking about vacations at all. So I'll start by saying that the reason all of these tester cases or really any of these reservation rule cases are going to be in that posture is because you can't have concrete or even somewhat concrete travel plans and get an injunction in time. So that's why these cases have been just generally litigated in this way in this pure tester posture. But the injury here, again, it's not just a denial of information. The day-to-day experience of being a disabled person is to have your world be very small because our marketplace, our places of public accommodation just ignore you. They don't see you. They don't recognize you as a potential customer or as a member of the marketplace. And so when Ms. Slaughter goes to the website and she sees that she's invisible, that they are not even acknowledging her. Well, suppose she goes to the website and rather than look at accessibility information, she goes to the website and she looks at lots of pictures of places and says, oh, this one doesn't have the required ramps. And, again, she's not going to those places. She has no intent of going to those places. But she sees that they don't have the required ramps, and she brings suit then. Does she have standing to do that? Because I think that that's pretty similar to what is going on in this case. So she does not have standing based on the pictures because she's not encountering the accessibility barrier herself. Well, I don't know. It's like right there. I mean, if you're saying it's how you experience discrimination, and I can understand that, but I'm experiencing that sense of being excluded when I see that all these hotels are set up to exclude me and others like me. There might be some sort of Article III argument there, but Congress certainly hasn't provided a cause of action there unless you actually have plans to go to the hotel. And I want to go back. Just to pause there for a moment, it sounds to me like you're edging right up to the Solicitor General's test. Am I missing something? I see the intuitive appeal of the government's test. I think the government, and we are both asking this question of how do you encounter discrimination on a website? And this goes to the analogy Justice Sotomayor was making. Our position is, well, in the physical barrier context, you experience, you encounter that accessibility barrier when you visit the hotel, regardless of whether you want to stay at the hotel or what your underlying motive is. So when we translate that into the Internet context, we say you encounter the accessibility barrier when you go to the website and click around. So maybe that's the difference. I just want to make sure I understand what the difference is. That's all I'm trying to do. The government says, yes, lack of information can be a form of discrimination. When you have some plans, how concrete that is, good luck. But some interest in making a reservation. And the other end of the spectrum, and I don't know where you are on this, is I'm just clicking around to see. And I'm looking for an absence of information. I'm going to seek out this discrimination without any plans, without any interest. It's just what I do. Is that standing in your view? I think that is the distinction between our position and the government's position. What's wrong with the government's position? So just to articulate what I think the government would say about your hypothetical, is the government says you have to use the website in some way. So I think our position is akin to driving by the website, and they want you to engage with it and actually make a reservation or engage with it in a way that shows you're considering making a reservation. We say in our brief, I'm not sure that distinction holds as a practical matter. No, I'm not sure that's going to be much of a pleading barrier if you were to adopt the government's position versus your client's, I think. But I'm just trying to understand what the real difference is, if there is any, or whether you're comfortable with the government's position. I'm comfortable with the government's position so long as it's understood as an inquiry into what you experience on the website and not your underlying motive for being on the website, and not whether you experience any downstream injury as a result of being on the website. And I think that's the real problem with Atchison's position. They are attempting to upend, I think, how this court has always defined discriminatory injury, which is the injury is in the dignitary harm. You don't have to show some sort of downstream consequence. I appreciate that, but just so I've really got it, the government says the motive's irrelevant. We don't care why you walk in. But we have to have some further engagement rather than just I'm spending the afternoon clicking through these things because that's what I do. Yes, I think that's right. They think our clicking around is equivalent to driving by and making the reservation. Something a little bit more. Yeah, I think that's it. And you're comfortable with that. I'm comfortable. I think it's compatible with Haven's. Thank you.  I think you said it several times that it's the discrimination you experience when you go to the website, when there's the encounter on the website. And I think that distinguishes it from Haven's where the discrimination was right there. And I understand Mr. Unikowski and I think perhaps the government says you can't add on, as if it made no difference, later discrimination on the website because she really doesn't need the information on the website. She's not going to use it. And so, to me, that's a key distinction between this case and Haven's. Well, in Haven's, Ms. Coleman didn't need the information either. Well, but I mean the actual discrimination was against her. Yes. Right? And that's all you needed. It was the information that was given there and her request. That's the end of the case. Here there's more. It is, as you say, discrimination on the website. We don't have that when she just goes in, calls the hotel. She's not on the website. And it seems to me that that takes it out of the initial encounter. Yes. I think the question then becomes how do you translate that Haven's in-person encounter to the digital realm? And I think if there had been a sign on the door at the realtor that said, if you're black, we have no apartments available, we wouldn't say that Ms. Coleman didn't personally experience that discrimination because it was just a sign that anyone would see if they came. Yes, but she's not on the website. She's talking to the person in the hotel. Right? So under the hypothetical I just gave with Ms. Coleman, she isn't actually talking to anyone. She's being told by a sign that there are no apartments available to her. Right, and I'm challenging the hypothetical because I think the hypothetical would say, not the sign, the sign is the website and she's going there, but she's not going to go there because she doesn't want the information from the website. She just needs to know from the conversation that it's not there. Sorry, you're talking about Ms. Coleman now just needs to know or Ms. Lauffer. Ms. Lauffer. So I think that what Ms. Lauffer experienced on the website is similar to Ms. Coleman confronting a sign that says no apartments are available. In both scenarios, Ms. Coleman had no interest in getting an apartment. Ms. Lauffer had no interest in staying at the hotel. Can I give you another hypothetical that I hope will clarify things a little bit? So suppose we have an African-American lawyer. This is back in the 60s, segregation time, 50s, 60s, who is across the street from a restaurant and they see, they know, that the restaurant is not serving black customers through the front window. And at this time the law says you're supposed to be and they're not. They're making these people go around the back. And he's obviously upset about this. He feels the dignitary harm of seeing this happen. But he somehow disclaims that he ever would have gone to the restaurant, ever wanted to go to the restaurant, et cetera. Is it your view that he would have standing to sue because he's aware of, he sees this discrimination occurring, but he's also said, I would never have subjected myself to that. And he's seeking injunctive relief, not damages. Yes. So under those circumstances, if you're not going to ever go up to the counter and ask for food, then you don't have standing. So why isn't Ms. Lauffer that person? Because Ms. Lauffer did allege that she would go back to the website and confront the accessibility barrier. But she's not confronting the barrier if she's not asking for food. I mean, she sees the barrier. I think this is where the breakdown is, I think. She's not like a tester who actually went to the counter. They didn't really want the food. They were only doing it to challenge. Motive is irrelevant. We all agree that that person would have standing because they actually went there and they experienced the discrimination. I want to know why she isn't the lawyer looking out the window across the street, seeing this happen, and how can you say that he's confronting the barrier? Because she went to the website and she engaged with the website. So he goes down, he goes out across the street, he's standing there. He goes. He's not just looking from across the street. He's literally right there at the counter because he wants to document this happening because he has in his mind, I really want to stop this, I'm going to sue. Right. But he never goes to the counter to ask himself for the food. I think Ms. Loffer is, in her circumstance, when she goes to the website and she engages in the reservation service, she is encountering that accessibility barrier. Right. But I think the government's position, if that doesn't resonate, the government's position, I think it works as well again. Some of the amicus briefs raise the concern that everyone throughout the United States can sue every inn and hotel throughout the United States and use the phrase, I'm not saying I agree with this, but this is the phrase in the amicus brief, online version of offended observers. And so I want you to respond to that. Is that ultimately the effect of your position? I'm not saying that means your position is wrong, but is that the effect of your position? No, it isn't. And I think this goes back to our discussion about Allen v. Wright. Here a disabled plaintiff is asserting a private right to equal treatment, and the cause of action is for individuals who have experienced a violation of that private right. So, one, you can't – you don't have a cause of action under Title III unless – Outside cause of action. Right. It's about standing. You don't – you have to be both disabled so that you're actually experiencing a discriminatory denial of information, and you have to have encountered the discrimination. You can't just hear about it. I think the – some of the amicus briefs also refer to then could every disabled person throughout the United States sue every inn and hotel throughout the United States. Again, not saying that means your position is wrong, but following up, I guess, on Justice Gorsuch. I'm trying to figure out where that leads. I think any disabled person who goes to the website, whether they make a reservation under the government's rule, but they're engaging with it and confronting the accessibility barrier, would have experienced a violation of their private right under Title III. But that's not an extension of Article III standing. That's just an application of traditional Article III principles to the digital realm. It's just – everyone's reach has been expanded for better or worse. Right, and I think the interesting, difficult question in this case, maybe on the standing side, is do you actually experience discrimination when you go to the website and you can get all the same information anyone else can get, but you're experiencing discrimination because what would happen if you went to the hotel? Well, so I don't think the discrimination is what would happen if you went to the hotel. The discrimination is – we say in our brief, it's as if you went up to a reservation desk in a wheelchair and the hotel had a practice of just ignoring anyone in a wheelchair or telling them to call a number. There is a dignity harm in being treated as invisible and not as a potential participant in the marketplace. So someone who didn't go on the website but was aware of this. Would not have experienced that. It's the website that's, in your view, creating the discrimination. And then Justice Gorsuch referenced quite correctly in my view that pleading – it might be easy to plead some of this to get around this, but at summary judgment, of course, the facts would have to hold up that you intended to travel somewhere, right? Well, I don't think there should be an intent to travel. Right. No, I know. Right. If there's an intent to travel requirement, no one is going to ever have standing to bring these suits in any meaningful way because the trips are going to happen before you get your relief. I thought maybe we'd return – One other one. In the reply brief – and I just want to make sure I have your answer on this – so U.S. v. Richardson is kind of a landmark standing case. In the reply brief, they say that U.S. v. Richardson would come out the other way, under your theory, if a plaintiff visited the CIA's website and observed that the information was absent. Do you want to respond to that? Yes. I think that's wrong for two reasons. One, again, that's a public right case, and also it's a pure informational injury. It doesn't involve a discriminatory denial of information. I was just going to return to the mootness point in Your Honor's concerns about manipulating the court's docket. I don't think that this is one of those cases. Of course, it is well established that the court can exercise its discretion on what to do here on a case-by-case basis. Here, we don't have a respondent who waited to hear what the court was going to do about granting review and then attempted to moot out the case. Ms. Loft were acquiesced to the court's review, and then there was this unexpected development that was deeply upsetting to her. She hasn't brought any of these suits, I think, in close to two years and already wasn't planning on bringing any more. The allegations against Mr. Gillespie were pretty devastating to her, and she didn't want to pursue these cases anymore, and that's why we dismissed the complaint as moot. We were completely transparent with opposing counsel and the court about the disciplinary order and about Ms. Loft's reasoning, and we acknowledged in our suggestion of mootness that we were not manipulating the court's jurisdiction, that it's free to reach the standing question if it thinks this case is still a good vehicle for doing so. And this is a highly unusual case in that not only does Ms. Loft not have an interest in it anymore, neither does Acheson because it doesn't own the hotel. Acheson has relied on Rule 25C, I think, in their petition for the proposition that they're still the right defendant, but all that Rule 25C does is provide that if an injunction issues that it binds the new owners. If anything, that makes it worse because the actual owners who are going to be bound by any injunction in this case aren't here, and we don't know what they think. But that injunction wouldn't apply to Acheson in any meaningful way. They don't own the reservation site or the hotel, and their only alleged interest in this case at this point is that Ms. Acheson now owns a different hotel. I think she takes the position that that hotel's reservation services is in compliance, and she might hypothetically get some lawsuit from someone else down the road. And I think this court's cases, Camreta v. Green and United States v. Juvenile, make clear that that sort of hypothetical future litigation isn't enough to avoid mootness. Thank you, counsel. Justice Thomas? Justice Alito? Justice O'Meara? I have one question. Some of MECI say that the Internet, as you've been arguing, is an especially important place for disabled people because they rely on it more than anything else because of the physical barriers to get to places. So the Internet is the way they travel to a lot of places to find information ahead of time. Are there any other common ADA claims that occur largely in the context of the Internet outside of the reservation rule and the screen reader cases? Oh, so I was going to say the screen reader cases. Yeah, those are the two, aren't they? Yeah, and the other circuit split has to do with whether freestanding Internet services that aren't attached to a place of public accommodation are themselves places of public accommodation subject to Title III. That's not implicated. That's sort of different. Yes. Can you tell me how our ruling here might have an impact on the screen reader cases? What could we say or not say that would address that split? I haven't thought of it, but I haven't delved into whether I have an answer for that. I do think that the credit union cases, and in particular Corello and the Seventh Circuit, are distinguishable because there you had a blind plaintiff who couldn't access the website, but there was an entirely independent reason that he couldn't fully enjoy it, and that was because he wasn't eligible to be a member. So that's an objective reason. It doesn't have to do with his subjective motive or any downstream consequences. He wasn't able to enjoy it anyway and therefore didn't experience the discriminatory injury under Title III. So I don't think that what the court does here necessarily impacts what's happening there. And then I guess... Yeah, I do think if the court adopts Atchison's position that in order to allege a discriminatory injury under Title III, you have to allege some sort of downstream injury would have an enormous consequence on the screen accessibility cases too. Thank you. Justice Kagan? Justice Gorsuch? Justice Kavanaugh? Justice Jackson? Thank you, counsel. Thank you. The bottle, Mr. Unicost. Thank you, Mr. Chief Justice. I'd just like to say a few words about the mootness issue and then a few words on the standing issue in which the court granted certiorari. On the mootness issue, I just think that in deciding whether to exercise its discretion to decide the question presented, the court should think about what's going to happen in the lower courts if it doesn't do that. So, first of all, in the Fourth Circuit, where Ms. Laufer's decision finding standing is binding precedent, it's essentially going to be impossible or almost impossible for a hotel to ever challenge standing because in the district court, the hotel would have to lose a motion to dismiss, litigate the case all the way to judgment, lose, appeal, lose based on binding circuit precedent and then file a petition for a hearing in bank or a cert petition. And, of course, if that happens, then the hotel will abandon the case and cite this case for the proposition that it's allowed to do that. So, essentially, plaintiffs within that circuit will be able to bring lawsuits forever. In other circuits, like the First and the Eleventh Circuit, okay, if the court wants and wears this case, it's going to be persuasive rather than binding precedent. But, of course, persuasive authority may prove influential to the district courts and even assuming that courts ignore it altogether, then you're going to have every single district court deciding this standing question in the first instance, which is going to lead to a lot of judicial resources being expended that would be saved if this case currently before the court is decided. So, I think that if the court is concerned about expending judicial resources, they would ultimately be saved at the end of the day if the court decides the question is presented. On the merits, just one word. I think that Justice Kagan's question about a plaintiff who observes an accessibility barrier on a website is the right way to think about this case. I think the lack of information about accessibility is an accessibility barrier in the same way as an actual architectural barrier is an accessibility barrier. In both cases, the plaintiff is deterred from going to the hotel. The lack of information deters the plaintiff from going to the physical building because the plaintiff doesn't know if they'll be able to get in, just as observing the accessibility barrier deters the plaintiff from going to the hotel because the plaintiff knows in that case that they can't get into the building. And so we think that those two cases should be understood the same way for purposes of standing. If going to the hotel is a requirement for the actual barrier, it should also be a requirement for lacking information about the barrier. So we're not seeking a far-reaching, ruling, abolishing tester standing or anything like that. We certainly haven't asked the court to overrule Haven's Realty. We're simply trying to align the law of standing in this case with the law of standing in other cases involving architectural barriers. If the court has no further questions, we'd ask the court to recuse. Thank you, counsel. The case is submitted.